UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES LABARR,

        Plaintiff,

  -v-                                                  8:17-CV-563

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SCHNEIDER & PALCSIK<br>Attorneys for Plaintiff<br>57 Court Street<br>Plattsburgh, NY 12901 | MARK A. SCHNEIDER, ESQ. |
| OFFICE OF REGIONAL GENERAL COUNSEL<br>  SOCIAL SECURITY ADMINISTRATION<br>  REGION II<br>Attorneys for Defendant<br>26 Federal Plaza<br>New York, NY 10019 | BENIL ABRAHAM, ESQ.<br>Special Ass't United States Attorney |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

    Plaintiff James LaBarr ("LaBarr" or "plaintiff") brings this action seeking review of

defendant Commissioner of Social Security's ("Commissioner" or "defendant") final decision

---

[1] On March 6, 2018, the U.S. Government Accountability Office reported that Nancy A. Berryhill's continued service as Acting Commissioner of the Social Security Administration violated the Federal Vacancies Reform Act of 1998, 5 U.S.C. § 3349(b). Defendant Berryhill currently serves as the Deputy Commissioner of Operations.

denying his application for Child's Insurance Benefits ("CIB"). The parties have filed their briefs as well as the Administrative Record on Appeal and the motions will be considered on the basis of these submissions without oral argument.[2]

## II. **BACKGROUND**

On February 22, 2012, LaBarr filed an application for CIB alleging that his mental conditions rendered him disabled beginning on January 10, 1993. Plaintiff's claim was initially denied on April 9, 2012.

At LaBarr's request, a video hearing was held before Administrative Law Judge ("ALJ") Carl E. Stephan on May 6, 2013. Plaintiff, represented by non-attorney representative Susan M. Westurn, appeared and testified. The ALJ also heard testimony from Vocational Expert ("VE") David Sypher. Thereafter, the ALJ issued a written decision denying plaintiff's application for benefits.

On September 3, 2014, LaBarr sought review of the Commissioner's decision denying his application for CIB by filing a civil complaint in the U.S. District Court for the Northern District of New York. Labarr v. Berryhill, 8:14-CV-1086. By Decision and Order dated March 21, 2016 (the "March 21 Order"), U.S. Magistrate Judge Thérèse Wiley Dancks vacated the Commissioner's decision and remanded plaintiff's claim to the Appeals Council.

On May 4, 2016, Administrative Appeals Judge Florence Felix-Lawson sent LaBarr's claim for benefits back to ALJ Stephan for additional consideration. Among other things, the Appeals Council directed the ALJ to (1) make a reasonable effort to ascertain the identity of

---

[2] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

- 2 -

"Tia," the person whom plaintiff identified as his counselor at the initial hearing; (2) obtain additional treatment records from treating psychiatrist Joshua Frank, M.D.; and (3) discuss in detail the weight provided to plaintiff's treating sources in light of any additional records and testimony.

On April 25, 2017, ALJ Stephan conducted a supplemental hearing. LaBarr, now represented by attorney Mark Schneider, appeared and testified. The ALJ also heard testimony from plaintiff's mother, Debbie LaBarr, and from Cherie A. Plante, another Vocational Expert. Thereafter, the ALJ issued a written decision again denying plaintiff's claim for benefits. R. at 326-337.[3] Plaintiff timely appealed.

## III. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing

---

[3] Citations to "R." refer to the administrative transcript.

Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. See id. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

### B. Disability Determination—The Five-Step Evaluation Process

"The Social Security Act provides for child's survivor benefits for the dependent minor children of deceased insured workers." Abreu v. Colvin, 152 F. Supp. 3d 166, 169 (S.D.N.Y. 2015) (citing 42 U.S.C. § 402(d)). An applicant qualifies for Child's Insurance Benefits if he "meets the Act's definition of 'child,' is unmarried, is below specified age limits (18 or 19) or is under a disability which began prior to age 22, and was dependent on the insured at the time of the insured's death." Astrue v. Capato, 566 U.S. 541, 547 (2012).

As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In

addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess

whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The burden of proof with regard to these first four steps is on the claimant.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five.  Perez, 77 F.3d at 46.  This step requires the ALJ to examine whether the claimant can do any type of work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs:  very heavy, heavy, medium, light, and sedentary.  Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity."  Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. LaBarr's Appeal

LaBarr contends the ALJ (1) failed to find him per se disabled under Listing 12.04; (2) improperly weighed the medical evidence; and (3) incorrectly evaluated the credibility of his own testimony.  Plaintiff argues his benefits application should be assigned to a different ALJ on remand because ALJ Stephan failed to follow Judge Dancks's remand order.

#### 1. Per Se Disability

First, LaBarr contends that his bipolar disorder meets Listing 12.04 and therefore the

ALJ should have found him disabled as a matter of law. Pl.'s Mem. at 29.[4]

"In order for a condition to be considered disabling per se [at] step three, it must satisfy each element set out in the definition of a listed impairment." Bolden v. Comm'r of Soc. Sec., 556 F. Supp. 2d 152, 162 (E.D.N.Y. 2007).

Listing 12.04 requires a claimant to first provide medical documentation establishing a qualifying diagnosis of either depressive disorder or bipolar disorder. In addition to this threshold showing, the claimant must demonstrate that he satisfies the "paragraph B" criteria: either an extreme limitation of one, or a marked limitation of two, of the four areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. See Listing 12.04(B). Alternatively, a claimant may sidestep the paragraph B criteria by demonstrating that his mental disorder is "serious and persistent" in accordance with paragraph C. See Listing 12.04(C).[5]

The record reflects the ALJ applied the appropriate legal standard at this step of the sequential evaluation and supported his finding with substantial evidence. See, e.g., Eby v. Colvin, 227 F. Supp. 3d 275, 278 (W.D.N.Y. 2017) (rejecting claimant's assertion that ALJ failed to find him per se disabled under Listing 12.04).

In particular, ALJ Stephan evaluated LaBarr's mental functioning in the four areas outlined in paragraph B and concluded plaintiff did not satisfy the "extreme" or "marked" requirements. R. at 329-31. The ALJ then concluded plaintiff did not meet the alternative

---

[4] Pagination corresponds to CM/ECF.

[5] LaBarr's argument is premised on an outdated version of the relevant Listing. Effective January 17, 2017, the Administration revised the medical criteria used for evaluating mental disorders like those claimed by plaintiff. These revised criteria apply to any benefits claims pending on or after the effective date.

- 7 -

criteria offered by paragraph C. R. at 331. Plaintiff's argument on this point is largely conclusory and the majority of his briefing on this issue is devoted to simply restating the Listing criteria without applying it to the facts of his claim.[6] At best, plaintiff appears to challenge the ALJ's decision not to fully adopt certain "marked" or "extreme" limitations assessed by Joshua Frank, M.D. ("Dr. Frank"), plaintiff's treating psychiatrist. That argument is discussed in greater detail below.

### 2. Medical Evidence

LaBarr next argues the ALJ erred by giving more weight to certain consultative medical sources than to the findings and opinions of Dr. Frank.

The opinion of a treating source as to the nature and extent of a claimant's impairments is binding on an ALJ where it is supported by objective medical evidence and not contradicted by other substantial evidence in the record. Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013). However, an ALJ may give an opinion less than "controlling" weight, and in some cases may even discredit it completely, where it is called into question by other evidence in the record, when it conflicts with a claimant's own self-reports, or where it suffers from internal inconsistencies. See, e.g., Michels v. Astrue, 297 F. App'x 74, 75 (2d Cir. 2008) (summary order).

Generally speaking, ALJs determine how much weight to afford a medical source's opinions by considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the opinion or report; (4) how consistent the opinion is with the record as a whole;

---

[6] Plaintiff also asserts that, but does not explain why, his anxiety disorder meets Listing 12.06.

- 8 -

(5) the area of specialization of the source in contrast to the condition being treated; and (6) any other factors which may be significant in a claimant's particular case. In so doing, an ALJ need not mechanically recite the criteria as long as the record reflects a proper application of the substance of the rules. See, e.g., Petrie v. Astrue, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order).

LaBarr argues the ALJ failed to fully credit the findings in Dr. Frank's March 3, 2013 medical source statement. Pl.'s Mem. at 26-29. Dr. Frank's March 3 statement indicated plaintiff's ability to understand, remember, and carry out instructions was affected by his impairment. R. at 277. In particular, Dr. Frank assessed "marked" limitations in plaintiff's ability to understand and remember simple instructions, to carry out simple instructions, and to make judgments on simple work-related decisions, and "extreme" limitations in plaintiff's ability to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions. Id. Dr. Frank identified plaintiff's "impaired concentration, mood swings, racing thoughts, [and] impulsive decision making" as factors supporting these limitations. Id.

Dr. Frank's March 3 statement also indicated LaBarr's ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changed in the routine work setting was also affected by his impairment. R. at 278. In particular, Dr. Frank assessed "marked" limitations in plaintiff's ability to interact appropriately with the public and his co-workers and in his ability to respond appropriately to usual work situations and to changes in a routine work setting, and "extreme" limitation in plaintiff's ability to interact appropriately with supervisors. Id. Dr. Frank identified plaintiff's "irritable mood," secondary "to mania, anxiety" and "hypervigilance due to PTSD," and "paranoid ideation" as factors

supporting these limitations.  Id.  Dr. Frank further opined that LaBarr's motivation is "low," that he has "anhedonia," that he "doesn't sleep, has poor self care," and is "easily influenced."  Id.

LaBarr argues the ALJ improperly disregarded these opinions by giving them "little weight."  Pl.'s Mem. at 28.  However, the record reflects the ALJ properly evaluated Dr. Frank's March 3 statement in connection with the rest of the medical record.  Among other things, the ALJ noted plaintiff's history of inconsistent treatment and his generally positive response to medication.  R. at 335.  In addition, the ALJ observed that Dr. Frank's assessment of significant limitations was inconsistent with plaintiff's range self-reported activities, which included spending time in public and/or social situations.  Id.

LaBarr further argues the ALJ gave undue weight to the opinion of John Laurence Miller, Ph.D., a consultative psychologist who met with plaintiff in March of 2012, and to non-examining state agency psychologist A. Herrick.  R. at 218-22, 223-36.  However, a review of the ALJ's written decision demonstrates that he thoroughly considered all of the medical evidence, including Dr. Herrick's and Dr. Miller's, in accordance with the appropriate legal standards and made reasonable determinations supported by substantial evidence.  See Micheli v. Astrue, 501 F. App'x 26, 29 (2d Cir. 2012) (summary order).

In sum, it is ultimately the ALJ's responsibility to choose between medical opinions and other evidence to piece together an overall assessment, and a mechanical recitation of the weighing criteria found in the Regulations is unnecessary as long as the record reflects that he properly applied the substance of those rules.  See, e.g., Suarez v. Colvin, 102 F. Supp. 3d 552, 574 (S.D.N.Y. 2015).  Here, the ALJ engaged in a thorough, narrative discussion of the chronological medical evidence before discussing the reasoning behind his

assignment of weight to the medical sources in the record.

### 3. **Credibility**

Finally, LaBarr faults the ALJ's evaluation of his credibility as insufficiently detailed, asserting that the ALJ "did not really give any good reasons for not believing" plaintiff's testimony regarding his mental limitations. Pl.'s Mem. at 36.

"An [ALJ] may properly reject [a claimant's subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999).

Further, an ALJ's "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination." Camille v. Colvin, 104 F. Supp. 3d 329, 345 (W.D.N.Y. 2015).

As the ALJ recognized in his written decision, he heard testimony from LaBarr on two separate occasions—first during the initial hearing and later during the supplemental hearing following remand. R. at 332. The ALJ discussed plaintiff's inconsistent history of treatment, and noted that periods of consistent mental health treatment tended to produce consistent results; i.e., that plaintiff "responded well" and things were "going well" as long as he maintained his medication regimen. Id. The ALJ also went on to note that plaintiff's self-reported allegations were inconsistent with certain observations made by Dr. Miller and Dr. Frank. R. at 335.

As with LaBarr's challenge to the medical evidence, the record reflects that the ALJ conducted a relatively painstaking inquiry into plaintiff's credibility in light of the complex medical, administrative, and federal court proceedings that have taken place in this matter over the years. The ALJ appears to have made reasonable conclusions on the basis of that inquiry. Where, as here, "the ALJ [has] identified specific record-based reasons for his ruling," it is improper for a reviewing court to "second-guess the credibility finding." Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010) (summary order).

## IV. **CONCLUSION**

The ALJ applied the appropriate legal standards and supported his decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1. LaBarr's motion for judgment on the pleadings is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. LaBarr's complaint is DISMISSED.

The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

Dated: August 8, 2018
      Utica, New York.

United States District Judge